[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11185

_____

ROBERT C. MCBRIDE,
Individually and in a representative capacity on behalf
of a class of all persons similarly situated, et al.,

Plaintiffs,

*versus*

GENWORTH LIFE AND ANNUITY INSURANCE COMPANY,
d.b.a. GE Life and Annuity Assurance Company,
f.k.a. Life Insurance Company of Virginia,

Defendant-Appellant,

*versus*

TVPX ARS, INC.,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:00-cv-00217-CDL

_____

Before BRANCH and LUCK, Circuit Judges, and SMITH,* District Judge.

PER CURIAM:

This case involves two lawsuits. In the first one, brought in 2000 against Genworth Life and Annuity Insurance Company, the class action plaintiff: "alleged that Genworth deceived customers purchasing universal life policies by representing that their premiums would remain level, vanish, or not be required in the future"; "alleged that Genworth wrongly and improperly assessed premiums in amounts higher than the premiums contracted for by the parties by applying an increased cost of insurance to cash value as policy holders grew older over time"; and "alleged that Genworth engaged in deceptive marketing practices by failing to disclose it charged cost of insurance rates, or that cost of insurance is

_____

* Honorable Rodney Smith, United States District Judge for the Southern District of Florida, sitting by designation.

determined at the whim or discretion of Genworth's management on a monthly basis." *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1322 (11th Cir. 2020) (cleaned up). The 2000 class action settled in 2004. As part of the settlement, the parties released all past, present, and future claims based on the allegations in the complaint and any cost of insurances rates and charges.

That was the end of it until 2018. That year, TVPX ARS, Inc. bought on the secondary market one of the same life insurance policies that was involved in the 2000 class action and sued Genworth. The 2018 lawsuit alleged "that Genworth had breached its insurance policies by failing to calculate [cost of insurance] rates in accordance with mortality expectations"; "asserted that, despite these continuously improved mortality expectations[,] Genworth has never once lowered the [cost of insurance] rates it charges its customers"; and "charged that Genworth actually *increased* its [cost of insurance] rates from 2013 through 2018, even though mortality expectations improved during that same time period." *Id.* at 1323–24 (cleaned up).

Genworth did two things in response to the 2018 lawsuit. First, it filed motions to dismiss and stay the 2018 lawsuit in the court hearing that case (in the Eastern District of Virginia). Second, it filed a motion in the closed 2000 class action to enjoin the 2018 lawsuit under the All Writs Act. This appeal involves the second motion.

Initially, the district court granted the injunction. But we vacated the injunction and remanded for limited fact finding. *Id.* at

1329–30. The district court could grant an injunction under the All Writs Act to preclude the 2018 lawsuit based on the settlement in the 2000 class action, we said, if Genworth established four elements: (1) the settlement had to be rendered by a court of competent jurisdiction; (2) it had to be final; (3) the 2000 class action had to involve the same parties (or their privities); and (4) the 2000 class action had to involve the same causes of action. *Id*. at 1325. The parties contested only the last element. *Id*. The same-cause-of-action requirement could only be met, we explained, where the new case "arises out of the same nucleus of operative facts, or is based upon the same factual predicate," as the "former action." *Id*. (quotation omitted). "When determining whether two cases arise out of a common nucleus of fact, the analysis centers on whether the primary right and duty are the same." *Id*. (quotation omitted). "Beyond that, the most basic principles of res judicata require that full relief must have been available in the first action in order for the second action to be barred." *Id*. (quotation omitted).

Applying this test, we held that "the same primary right and duty are at issue in" the 2018 lawsuit. *Id*. at 1326. But, as to whether TVPX could bring the same claims in the first action, the released conduct must "arise[] out of the identical factual predicate as the claims at issue in the case." *Id*. (quotation omitted). "And an identical factual predicate cannot exist unless the defendant was engaged in the same offending conduct during the prior action." *Id*. (quotation omitted). We explained that "there is nothing else in the record to indicate that the way Genworth calculates and charges [cost of insurance] has remained unchanged since the"

2000 class action. *Id.* at 1327. "Because the record [wa]s not sufficient to support a finding that Genworth's [cost-of-insurance]-related practices have remained unchanged since the" earlier litigation, we held that the district court abused its discretion in so finding. *Id.* at 1328. We remanded "for limited discovery on whether Genworth has in any way changed how it calculates and charges [cost of insurance] since the" settlement of the 2000 class action. *Id.* That is, we remanded "for further factual development of whether Genworth has in any way altered how it calculates or charges [cost of insurance] since the" settlement. *Id.* at 1329–30.

"On remand, the parties conducted discovery relevant to the resolution of this issue," and "then Genworth renewed its motion to enforce [the] class settlement." "Having carefully reviewed the present record," the district court found that "the factual predicate for" the 2018 lawsuit "is different." The 2018 lawsuit, the district court continued, "relies upon conduct that occurred after the" settlement of the 2000 class action "in support of new claims." "[T]he conduct had not yet occurred and was a different type of conduct, albeit similar." "[T]his new alleged conduct is different in kind and degree and not a mere continuation of the same previous conduct," so the 2018 lawsuit "do[es] not share an identical factual predicate with the claims in" the 2000 class action. In other words, the district court found that Genworth did, in some way, alter how it calculates or charges cost of insurance since the earlier settlement. Based on its findings, the district court denied the motion to enforce or enjoin under the All Writs Act. Genworth appeals.

The issue for us on appeal is whether the district court's findings were clearly erroneous.  After careful review of the record on remand, we conclude that they were not.  Expert testimony supported the district court's findings that Genworth, in some way, altered how it calculates or charges cost of insurance since the settlement of the 2000 class action.  Here's what TVPX's expert told the district court:

> Genworth's practices regarding the relationship between mortality expectations and [cost of insurance] rates for the Contender Product have changed since the [2000 class] action. As discussed in more detail below, at the time of the . . . settlement and final judgment, Genworth's practice was to maintain [cost of insurance] rates reflecting mortality expectations, which is consistent with the Whitaker Policy's requirement [that cost of insurance r]ates be "determined by us according to expectations of future mortality." But since [the settlement], Genworth has changed its [cost of insurance] practices to give itself complete discretion in the factors it uses to redetermine [cost of insurance] rates, which means [cost of insurance] rates no longer reflect just Genworth's current mortality expectations and are therefore not determined "according to expectations of future mortality."

⋆　⋆　⋆　⋆

[I]t is clear Genworth has changed its [cost of insurance] determination practices since the [2000] action and no longer maintains [cost of insurance] rates for the Whitaker Policy and Contender Product reflecting just Genworth's current mortality expectations. Instead, Genworth's current practice—since 2014—is to adjust [cost of insurance] rates in light of the Contender Product's overall projected profitability considering all anticipated experience factors. This means mortality has been relegated and subordinated to just one of many factors that can (but do not need to) be considered by Genworth, and Genworth's [cost of insurance r]ates are no longer determined "according to expectations of future mortality."

While Genworth points to other evidence that it did not alter its cost of insurance charges since the settlement of the 2000 class action, the district court credited the expert's conclusion that the company did make some changes to how it calculated those charges. We cannot say that the district court's choice to credit one expert's testimony over conflicting evidence was clear error. *See United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010) ("The district court did not commit clear error in considering the conflicting expert testimony and crediting one view over the other. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quotation omitted)).

Genworth raises one other issue.  The company contends that the district court abused its discretion by denying Genworth leave to file a counterclaim for breach of the settlement agreement.  But "[r]ule 15(a), by its plain language, governs amendment of pleadings *before* judgment is entered; it has no application *after* judgment is entered . . . .  Post-judgment, the plaintiff may seek leave to amend [*only*] *if* [it] is granted relief under [r]ule 59(e)  or [r]ule 60[]." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344–45 (11th Cir. 2010) (quotation omitted, emphasis added).  Genworth hasn't moved for relief under rule 59 or rule 60.  So, "[g]iven [our] precedent, we could hardly hold that the district court abused its discretion in denying [Genworth] leave to amend [the] complaint post-judgment." *Id*. at 1345.

**AFFIRMED.**